IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CROSSROADS SYSTEMS (TEXAS), INC.,
**Plaintiff,**

-vs-                                                    Case No.  A-03-CA-754-SS

DOT HILL SYSTEMS CORPORATION,
**Defendant.**
_____

## **O R D E R**

BE IT REMEMBERED on the 18th day of May 2006, the Court called the above-styled cause for a hearing, and the parties appeared through counsel.  Before the Court were Plaintiff's Motion to Compel Further Testimony of Thomas Lavan Based on a Waiver of the Attorney-Client Privilege [#364], Defendant's Counter Motion to Compel the Return of Privileged Documents Bearing Bates Numbers DH337763–DH337768 and DH337839 [#373], Plaintiff's Motion to Disqualify Morgan & Finnegan, LLP as Trial Counsel for Dot Hill [#360], and Plaintiff's Motion for Partial Summary Judgment Dismissing Dot Hill Systems Corporation's Affirmative Defense of Invalidity of the '972 Patent with Prejudice [#356].  Having considered the foregoing motions, the accompanying responses and replies, the arguments of counsel at the hearing, and the relevant law, the Court now confirms its oral announcements with the following opinion and orders.

I.      **Cross-Motions to Compel**

In its Motion to Compel Further Testimony of Thomas Lavan Based on a Waiver of the Attorney-Client Privilege, Plaintiff Crossroads (Texas), Inc. ("Crossroads") seeks an order

compelling Thomas Lavan to answer questions relating to communications contained in an email document produced in the course of discovery by Defendant Dot Hill Systems Corporation ("Dot Hill"), the substance of which Dot Hill argues is covered by the attorney-client privilege.  In its counter motion, Dot Hill seeks an order compelling the return of the allegedly privileged document.

On July 6, 2004, Dot Hill produced to Crossroads an email drafted by Thomas Lavan, Chaparral Network Storage, Inc.'s ("Chaparral")[1] Director of Intellectual Property, addressed to Chaparral's outside patent counsel, Alan Davis.  After the email was produced, Dot Hill's designated 30(b)(6) witness, Dana Kammersgard, was asked several questions about its substance at his deposition.  Although numerous objections to these questions were interposed, none of these objections was based on attorney-client privilege.  Some eighteen months later, Lavan himself was the subject of a deposition at which questions about the email were asked.  At this deposition, Dot Hill's counsel objected that the email was protected by the attorney-client privilege and instructed Lavan not to answer questions concerning its substance.  Thereafter, Dot Hill asked Crossroads to return all copies of the email.  Crossroads responded that Dot Hill had waived its right to assert the privilege by voluntarily producing the email and permitting Kammersgard to be questioned regarding its substance.  Back-and-forth discussions ensued, and another deposition was held, but each party maintained its position with respect to the discoverability of the email and matters related to it.  The cross-motions to compel followed.

---

[1] During the course of this litigation, Dot Hill acquired Chaparral, and Crossroads asserts infringement of its patents against Dot Hill on the basis of both Dot Hill's original products and the Chaparral products.

"A corporate client has a privilege to refuse to disclose, and prevent its attorneys from disclosing, confidential communications between its representatives and its attorneys when the communications were made to obtain legal services." *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999).  The privilege may be waived, however, by the failure to assert it when information subject to privilege is sought during the course of legal proceedings. *Id.*  Inquiries into the substance of discussions between a client and his or her attorney clearly implicate the privilege. *Id.*

The facts before the Court demonstrate Dot Hill waived the privilege by disclosing the confidential email to Crossroads without objection in June of 2004.  First, the fact that the email was potentially subject to a claim of privilege was evident from the face of the document.  It is addressed to a person whose email address was "alan@huffmanlaw.net."  The documents attached to the email show that the sender, Lavan, was explaining to the recipient the steps Chaparral had taken to design products that did not infringe the '972 and the '035 patents.  Each of the documents were specifically marked "Confidential—Attorneys' Eyes Only" by Dot Hill.

Dot Hill attempts to argue the production of the email was not a voluntary waiver of privilege because it was merely inadvertent.  The law of this circuit is clear that when privileged materials are disclosed inadvertently, the disclosure will not be deemed a waiver of privilege if certain conditions are met. *Alldread v. City of Grenada*, 988 F.2d 1425, 1433–34 (5th Cir. 1993).  A five-factor test has been approved for determining whether a waiver of privilege has occurred: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Alldread v. City of Grenada*, 988 F.2d 1425, 1433–34 (5th Cir. 1993) (approving the five-factor test developed in *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323 (N.D. Cal. 1985)).

-3-

Dot Hill may well be correct that its inadvertent production of the confidential email would not have been sufficient to trigger a waiver under the *Hartford* test if it were the only fact in issue. The fundamental defect in Dot Hill's argument, however, is that Dot Hill did more than inadvertently disclose the document. Its counsel discovered the disclosure at a deposition when Kammersgard was questioned about it in July of 2004, and Dot Hill took absolutely no action to remedy the inadvertent disclosure until February of 2005, when the document was introduced at another deposition.

Dot Hill contends that Kammersgard's deposition was insufficient to put it on notice that it had inadvertently produced a privileged document because "Kammersgard . . . was unfamiliar with the Lavan e-mail." Dot Hill's Opp'n Mot. Compel Dep. Lavan at 3. Kammersgard's lack of familiarity with the email is a red herring. Dot Hill's counsel had in his possession sufficient facts that should have, at the very least, caused him to investigate the basis for asserting a claim of privilege, if not to assert the privilege then and there. Given that the email was addressed to an individual at huffmanlaw.net and the fact that the email's substance related to infringement or non-infringement of the patents in suit, neither personal knowledge on the part of Kammersgard nor the employment of any great sleuthing skills should have been necessary to put Dot Hill on notice that it had produced a document that may have contained privileged communications that were made for the purpose of securing legal advice.

Dot Hill has not pointed to a single case in which an attorney's outright failure to recognize a viable privilege objection may fall within the scope of the inadvertence exception to the voluntary waiver doctrine. Indeed, the majority of the cases Dot Hill cites in support of its position involve documents inadvertently disclosed because they were lost in the shuffle of large-scale document productions. *United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 485, 490

(N.D. Miss. 2006); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 140–41 (E.D. Tex. 2003); *Myers v. City of Highland Village*, 212 F.R.D. 324, 327–28 (E.D. Tex. 2003). Although such a "lost in the shuffle" argument may have saved the privilege initially, Dot Hill's failure to take steps to effectuate the return of the email after specifically learning of its production at a deposition dooms its late attempts to assert the privilege. *Cf. Alldread*, 988 F.2d at 1433 (affirming a no waiver finding where the producing party immediately demanded the return of privileged materials upon discovering their disclosure at deposition); *United Investors*, 233 F.R.D. at 490 (finding no waiver of privilege where the return of all privileged documents was demanded as soon as the disclosure of each such document was discovered).

Moreover, even if Dot Hill could colorably claim it did not have a sufficient basis on which to recognize the alleged inadvertent disclosure at the Kammersgard deposition, it still did not act promptly enough to preserve its rights after the initial Lavan deposition. Lavan was deposed on February 8, 2006, and at that time Dot Hill's counsel demanded return of the email on privilege grounds. Written requests for return were then put forth on February 13, 2006 and February 21, 2006. Crossroads denied each request in writing on February 22, 2006. Despite the fact that the negotiations between the parties over the email had reached an impasse by February 22, 2006, Dot Hill did not seek relief from the Court until May 11, 2006, and only as a part of its response to Crossroads's motion to compel further testimony. Given that it failed to assert the attorney-client privilege at all the first time its counsel became aware Crossroads had possession of the Lavan email, and then failed to seek relief from the Court for nearly three months after it became aware Crossroads would not return the document for which it was then actively asserting the privilege, the Court holds Dot Hill has waived the attorney-client privilege here.

Once a party waives the attorney-client privilege with respect to one communication, the privilege is waived with respect to all communications relating to the subject matter of the disclosed communication. *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (applying Fifth Circuit law). Because the Court holds Dot Hill waived the attorney-client privilege with respect to the Lavan email, Crossroads is entitled to retain the email and to inquire into all communications related to it. Finally, because Dot Hill has not met its burden of demonstrating that all inquiries into the subject matter of the email would be irrelevant, the Court declines to sustain its objections on relevance grounds. *See, e.g., Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant."); *Compagnie Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984).

Nonetheless, the Court will not order Dot Hill to produce Thomas Lavan for another deposition because Crossroads's motion to compel was not timely filed. *See* Local Rule CV-16(d) ("Absent exceptional circumstances, no motions relating to discovery, including motions under Rules 26(c), 29, and 37, shall be filed after the expiration of the discovery deadline, unless they are filed within five (5) business days after the discovery deadline and pertain to conduct occurring during the final seven (7) calendar days of discovery."). The original "fact discovery" deadline fell on February 24, 2006. Crossroads's fact discovery deadline was later extended to April 7, 2006, and Dot Hill's deadline was extended to April 21, 2006. Nonetheless, the motion to compel was not filed with the Court until April 27, 2006. The parties have known since November of 2005 that the trial in this case would take place in June of 2006, and since March 7, 2006, they have known of the case's special

June 5, 2006 setting.  Under these circumstances, the Court declines to permit any additional discovery.

## II.      Motion for Partial Summary Judgment

Crossroads's partial summary judgment motion is directed to the narrow question of whether Dot Hill is collaterally estopped from litigating its invalidity defenses with respect to one of the two patents at issue in this lawsuit. In November of 2001, this Court entered a final judgment in *Crossroads Systems (Texas), Inc. v. Chaparral Network Storage Inc.*, cause number A:00-CA-217-SS, following a jury trial.  Included in that judgment was a finding that United States Patent No. 5,941,972 ("the '972 patent") was a valid patent and that it was infringed by Chaparral. The judgment was appealed and then affirmed by the Federal Circuit.  *Crossroads Sys., (Texas), Inc. v. Chaparral Network Storage, Inc.*, 56 Fed. Appx. 502 (Fed. Cir. 2003).

The instant lawsuit was filed on October 17, 2003.  In its original complaint, Crossroads alleged Dot Hill was infringing the '972 patent as well as United States Patent No. 6,425,035 ("the '035 patent") through its "making, using, offering for sale, selling, and/or importing into the United States certain of its SANnet I, SANnet II, and Axis Storage Manager products . . . ." Compl. at 2–3. In February of 2004, Dot Hill acquired Chaparral.  Pl.'s Mot. Part. Summ. J., Ex. B at 1.  Then, on August 27, 2004, Crossroads filed a second amended complaint, in which it added to its allegations against Dot Hill averments that certain Chaparral products infringe the '972 and '035 patents. Crossroads contends that because Dot Hill acquired Chaparral, which was a party to the earlier litigation in which Crossroads prevailed on the question of the '972 patent's validity, Dot Hill is estopped from asserting that patent's invalidity in this lawsuit.

"The doctrine of collateral estoppel applies to prevent issues of ultimate fact from being relitigated between the same parties in a future lawsuit if those issues have once been determined by a valid and final judgment." *Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005). A party is estopped from relitigating an issue when four factors are present: "First, the parties in a later action must be identical to (or at least in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits." *Id.* at 704–05.

Dot Hill does not challenge either the second or third factors. Instead, it argues collateral estoppel should not apply for following three reasons: First, Dot Hill argues the facts and issues are not the same in this proceeding as they were in the earlier one: (1) because it intends to present new prior art evidence not introduced in the Chaparral case as well as a defense under 35 U.S.C. § 112; and (2) because Crossroads has sought and obtained different claims constructions in this case than the ones that were used in the first case. Second, Dot Hill contends it is not in privity with Chaparral, and thus it cannot be bound by the earlier judgment. Finally, Dot Hill argues Crossroads waived the defense of collateral estoppel by failing to plead it earlier.

Dot Hill's first argument raises the question of how the scope of the "issue" should be framed when determining issue preclusion. Because there are numerous subsidiary issues that affect the validity of a patent, some of which may well be different in this case than the subsidiary issues presented in the *Chaparral* case, estoppel would not preclude Dot Hill from asserting its various invalidity defenses were the Court to focus its attention on each such subsidiary issue. The problem for Dot Hill's argument is that the overwhelming weight of authority suggests that the "issue" that

is to be given issue-preclusive effect to a judgment in the patent context is the ultimate determination on patent validity itself, not the sub-issues or the individual pieces of evidence and arguments that may have been necessary to support the validity determination.  *See Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1324 (Fed. Cir. 2003) (characterizing both validity and infringement as single issues in the context of a collateral estoppel inquiry); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119, 1126 (C.D. Cal. 2005) ("[V]alidity, in the patent context, is a single issue for purposes of collateral estoppel."); *Zip Dee, Inc. v. Dometic Corp.*, 905 F. Supp. 535, 537–38 (N.D. Ill.1995); *Pall Corp. v. Fisher Scientific Co.*, 962 F. Supp. 210, 213 (D. Mass. 1997); *Advanced Display Sys. v. Kent State Univ.*, Nos. 3-96-CV-1480-BD, 3-96-CV-1608-BD, 2002 WL 1489555, at *10 (N.D. Tex. July 10, 2002); *Unique Coupons v. Northfield*, No. 99 C 7445, 2000 WL 631324, at *1 (N.D. Ill. May 16, 2000).  Since the Court holds that the '972 patent's validity should be defined as a single issue, the factual question underlying Dot Hill's invalidity defense is identical to the validity question in the *Chaparral* case; the fact that Dot Hill may have new evidence and arguments pertaining to the '972 patent's validity is irrelevant.  *Cf. Dana*, 342 F.3d at 1325 (holding that the "issue" for collateral estoppel purposes was not rendered non-identical simply because the defendant sought to introduce different evidence than that which it put on in an earlier case).

 Dot Hill's second argument against the application of collateral estoppel has considerably more merit.  Dot Hill contends that Crossroads has made an insufficient showing that it is in privity with Chaparral such that the Chaparral judgment may be fairly held against it.  The Fifth Circuit has identified three primary ways of establishing privity:

> First, a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party. Second, a non-party who controlled the original

suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.

*S.W. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) (citations omitted).

Crossroads argues Dot Hill is in privity with Chaparral under the first of these tests because Dot Hill succeeded to Chaparral's interest in property. There is no question that in certain cases, patent validity determinations will bind a successor in interest to the property of a company that fought and lost a dispute over patent validity. In *Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335 (7th Cir. 1969), for example, the Kiekhaefer Corporation sued the West Bend Company claiming that West Bend's Tiger Shark 800 products infringed two of its patents. *Id.* at 336. The parties entered a consent decree declaring that Kiekhaefer's patents were valid and that West Bend infringed. *Id.* The parties entered into a licensing agreement, and West Bend continued manufacturing the accused product under the agreement. *Id.* Thereafter, West Bend sold and transferred its division responsible for the manufacture and sale of the Tiger Shark 800 products to Chrysler. *Id.* A company called the Brunswick Corporation then succeeded to Kiekhaefer's interest in the patents, and Brunswick thereafter sued Chrysler for infringement. *Id.* Chrysler asserted the affirmative defenses of invalidity and noninfringement, and Brunswick moved to strike both defenses. *Id.* The district court denied the motion, but the Seventh Circuit reversed. *Id.* at 336–38. The court held:

> Chrysler purchased from The West Bend Company the entire business that was devoted to the production of 'Tiger Shark 800' outboard motors and the inboard-outboard stern drives used with such motors. Furthermore, The West Bend Company, having ceased all operations in the field of outboard motors, transferred both its manufacturing and sale facilities and also its personnel to Chrysler. It follows that Chrysler does stand in the shoes of The West Bend Company with respect to the decree in No. 61-C-102.

*Id.* at 338.

-10-

The result in the Seventh Circuit case seems eminently fair and sets a good policy.  A party should not be able to evade an adverse judgment on the issues of validity and infringement simply by transferring its assets.  However, the facts of *Brunswick* are not on all fours with this case.  Unlike the two suits at issue in *Brunswick*, the accused products here are not the same as the accused products in *Chaparral*.  Indeed, if they were the same, Crossroads would assuredly be arguing that Dot Hill is estopped from contesting not only the issue of patent validity but also the issue of infringement.

The fact that different products are involved in the two cases at issue is not without significance.  Although a transfer of property may give rise to privity, it is only a limited kind of privity for collateral estoppel purposes.  "[W]hen one party is a successor in interest to another with respect to particular property, the parties are in privity only with respect to an adjudication of rights *in the property that was transferred*; they are not in privity for other purposes, such as an adjudication of rights in other property that was never transferred between the two."  *Int'l Nutrition Co. v. Horphag Research, Ltd.*, 220 F.3d 1325, 1329 (Fed. Cir. 2000) (emphasis added).

As is made clear by Crossroads's proposed verdict form, each one of Crossroads's allegations of infringement of the '972 patent is based on the original Dot Hill products that were identified in the original complaint—before Dot Hill even acquired Chaparral; none of the '972 patent infringement allegations are based on Chaparral legacy products.  Because Dot Hill is not in privity with Chaparral with respect to its original products, collateral estoppel should not apply to Dot Hill's validity defenses to the '972 patent.

This result is consistent with the analysis employed in a similar case decided by the District Court for the District of Massachusetts.  *Pall Corp. v. Fisher Scientific Co.*, 962 F. Supp. 210 (D.

Mass. 1997). *Pall* was a patent infringement action in which there were six different accused products at issue. *Id.* at 213. The defendant in the case had acquired two of the products that were accused of infringing sales from another company that had previously litigated and lost on the question of the validity of the plaintiff's patent. *Id.* at 213–14. The court was tasked with determining the issue-preclusive effect of this prior adjudication on the defendant's asserted invalidity defenses. *Id.* The court made clear that although it found the defendant and the company from which it had acquired two of its products to be in privity, they were only in privity with respect to the two acquired products. *Id.* Accordingly, the court held that collateral estoppel would only preclude the defendant from asserting its invalidity defenses with respect to the two products it had acquired from the prior judgment loser. *Id.* The court recognized that its decision created the possibility that the patent at issue might ultimately be adjudged both valid (with respect to the two products for which there was privity) and invalid (with respect to the remaining four products)—resulting in a fundamentally inconsistent result since patent validity is a single issue. *Id.* at 214. However, the court made clear that this result was dictated by "the conflicting demands of collateral estoppel and the Due Process Clause." *Id.*

Here, because *none* of the Chaparral legacy products are accused of infringing the '972 patent, there is no danger of inconsistent results by denying a privity finding with respect to the original Dot Hill products. Accordingly, here, even more clearly than in *Pall*, both logic and fairness require that Dot Hill be permitted to assert its validity defenses to the '972 patent in this suit.

Crossroads also contends that Dot Hill should be deemed to be in privity with Chaparral under the doctrine of virtual representation. The theory of virtual representation, in its broadest form, precludes "relitigation of any issue that had once been adequately tried by a person sharing a

-12-

substantial identity of interests with a nonparty." 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4457 (2d ed. 2002). In application, the theory is somewhat vague, but it is clear that a necessary prerequisite for the doctrine's use is that there be an identity of interests between the parties. *Tyus v. Schoemehl*, 93 F.3d 449, 455 (8th Cir. 1996). Other relevant factors include "a close relationship between the prior and present parties; participation in the prior litigation; apparent acquiescence; and whether the present party deliberately maneuvered to avoid the effects of the first action." *Id.* at 456 (quoting *Petit v. City of Chicago*, 766 F. Supp. 607, 612 (N.D. Ill. 1991)). Taken as a whole, the factors supporting virtual representation all suggest that the identity of interest between the parties should exist at the time the first suit it litigated. Indeed, in the one case Crossroads cites in support of its virtual representation theory, the court acknowledged that virtual representation typically "will not serve to bar a nonparty's claim unless the nonparty has had actual or constructive notice of the earlier litigation, and the balance of equities tips in favor of preclusion." *Boston Scientific Corp. v. Schneider (Europe) AG*, 983 F. Supp. 245, 258 (D. Mass. 1997) (quoting *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 758 & n.5 (1st Cir. 1994)).

   *Boston Scientific* did ultimately apply the doctrine of virtual representation based on the merger of two companies even though the merger did not occur until near the completion of the first litigation and only after the suit before the court had already begun. *Id.* Nonetheless, as Dot Hill points out, *Boston Scientific* is clearly distinguishable. In holding that the defendant in the case was estopped from contesting the validity of the plaintiff's patent as a result of a judgment against the company with which it merged, the court noted several facts of significance that made it equitable to apply the doctrine of virtual representation, the most significant of which was the fact that the

-13-

defendant had actual notice of the earlier litigation while it was being conducted. *Id.* There is no evidence that such awareness of the prior litigation existed here, and the Court holds Crossroads has failed to adequately demonstrate the presence of factors to warrant the application of the doctrine of virtual representation.

Because the Court holds Crossroads has failed to demonstrate the application of collateral estoppel would be appropriate in this case, it need not separately reach the waiver issues raised by Dot Hill.

### III.    Motion to Disqualify Morgan & Finnegan

On September 9, 2004, this Court held a hearing on a motion to compel discovery filed by Crossroads, in which it was made known to the Court that certain members of the Morgan & Finnegan law firm had provided Dot Hill with non-infringement opinions in relation to the accused products at issue in this case and that other Morgan & Finnegan lawyers were serving as Dot Hill's trial counsel. The Court made clear at that time it would not permit the Morgan & Finnegan firm to serve as trial counsel if the opinions of other members of the firm were offered in support of Dot Hill's defense to Crossroads's willfulness allegations. H'rg Tr. Sept. 9, 2004 at 8. At the time of the hearing, Dot Hill's counsel took the position that it was possible that none of the Morgan & Finnegan attorneys would be called to testify at the trial, but in the event that they were, Morgan & Finnegan's attorneys would not serve as trial counsel since there were two other firms representing Dot Hill. *Id.* at 18. Since the September 2004 hearing, Dot Hill has disavowed its initial statements on the subject and indicated that it intends to have Morgan & Finnegan participate as trial counsel even though Crossroads has made clear that it will call Morgan & Finnegan attorneys to testify on the opinion

letters Dot Hill intends to offer in its defense.  As a result, Crossroads brings the disqualification motion presently before the Court.

Initially, Crossroads indicated it "expects to call" at least one of three Morgan & Finnegan attorneys that gave non-infringement opinions to Dot Hill as part of its case-in-chief to demonstrate that "Dot Hill's reliance on the opinions was not reasonable."  Pl.'s Mot. Disqualify at 2.  At the hearing, Crossroads gave up on its earlier equivocation and stated firmly that it would call at least one Morgan & Finnegan attorney to testify at trial.  Accordingly, the Court stands by its initial admonitions and holds Morgan & Finnegan will not be permitted to serve as trial counsel in this matter.

Under the precedent of the Fifth Circuit, a disqualification motion filed in a federal district court is governed by at least four separate ethical canons: the local rules of the district court in which the motion is brought, the American Bar Association ("ABA") Model Rules of Professional Conduct ("Model Rules"), the ABA Model Code of Professional Responsibility ("the Model Code"), and the rules of professional conduct employed by the bar of the state in which the court sits.  *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995).  Here, the various canons are univocal on a central point in issue: an attorney shall not serve as trial counsel when it becomes clear he or she will be a necessary witness in the trial of the case.

Rule 3.08(a) of the Texas Disciplinary Rules of Professional Conduct ("the Texas Rules") provides:

> A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless [certain enumerated exceptions apply].

TEX. DISC. R. PROF. CONDUCT 3.08(a).

Similarly, the Model Rules provide that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." MODEL RULES OF PROF'L CONDUCT R. 3.7(a). Further, the Model Code provides, in relevant part, that "[a] lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client [unless certain enumerated exceptions apply]." MODEL CODE OF PROF'L RESPONSIBILITY DR 5-101(b).

Finally, the Local Rules of the Western District of Texas incorporate both the Texas Rules and the Model Code by reference. Local Rule AT-4. They also add the following provision pertinent to lawyer testimony:

> [L]awyers appearing in this court shall . . . [n]ot conduct a trial when they know, prior thereto, that they will be necessary witnesses, other than as to merely formal matters such as identification or custody of a document or the like. If during the trial, they discover that the ends of justice require their testimony, they should, from that point on, if feasible and not prejudicial to their client's case, leave further conduct of the trial to other counsel. If circumstances do not permit withdrawal from the conduct of trial, lawyers should not argue the credibility of their own testimony.

Local Rule AT-5.

Although the various ethical canons speak with one voice with respect to the general question of whether an attorney who will be called to testify in a trial may serve as trial counsel, their unanimity breaks down somewhat when it comes to other members of the testifying lawyer's firm. For instance, the Model Rules allow members of the lawyer's firm to serve as trial counsel unless the

conflict of interest rules would prohibit their service. MODEL RULES OF PROF'L CONDUCT R. 3.7(b). The Texas rules are less forgiving as they prohibit other members of the firm from serving as trial counsel unless their client gives informed consent. TEX. DISC. R. PROF. CONDUCT 3.08(c). Finally, the Model Code takes the hardest line, treating the members of a testifying lawyer's firm exactly the same as the testifying lawyer for purposes of the prohibition on service as trial counsel. *See generally* MODEL CODE OF PROF'L RESPONSIBILITY DR 5-101, DR 5-102. The local rules of this district do not address the issue.

The Court believes that under the circumstances presented here, a strict prohibition on all members of the testifying lawyer's firm serving as trial counsel is appropriate. *See Dynasty Apparel Indust., Inc. v. Rentz*, 206 F.R.D. 596, 599 (S.D. Ohio 2001) ("[W]hen one lawyer is disqualified under DR 5-101(B), because he will testify as a witness, his entire law firm and all other lawyers in it must also be disqualified.").[2] Crossroads will be seeking to attack the reasonableness of Dot Hill's reliance on the opinions given by Morgan & Finnegan attorneys, in part, by attacking the accuracy and validity of the opinions themselves as well as the work underlying the formulation of the opinions. Moreover, the reasonableness of Dot Hill's reliance on the opinions will necessarily raise other factual questions, such as what relevant, non-privileged facts (besides those contained in the opinion letters) were communicated between Dot Hill and its opinion counsel. *See, e.g.*, *Teledyne Indus., Inc. v. Associated Mills, Inc.*, No. 82 C 7525, 1985 WL 686, at *2 (N.D. Ill. Apr. 22, 1985) ("It is clear, and the parties agree, that communications between attorney and client provide direct evidence

---

[2] The Fifth Circuit's decision to reverse an interlocutory order disqualifying an entire firm in the attorney-witness context in *U.S. Fire* does not require a contrary result. There, the court specially noted that cases decided in this context must be decided on their own "peculiar facts." *U.S. Fire*, 50 F.3d at 1313. A fact of great significance in this case, which was not present in *U.S. Fire*, is that the disqualification of Morgan & Finnegan will not leave Dot Hill without counsel of its choosing but will simply cut down the number of firms representing it from three to two.

relevant to the advice of counsel defense, since they reveal the degree of the client's good faith in disclosing facts to the attorney and in purportedly carrying out the attorney's advice.").  Since both the credibility and legal acumen of Morgan & Finnegan attorneys will be in issue at the trial, if other Morgan & Finnegan attorneys were permitted to serve as trial counsel, they would be placed in the awkward and unseemly position of having to advocate for the credibility and reliability of the testimony of their law partners.  Even worse, if the testifying Morgan & Finnegan attorneys were to give testimony that was adverse to Dot Hill's interests, the attorneys serving as trial counsel would be squarely confronted with a conflict of interest in grappling with competing duties to the client and to the firm.

Other potential problems would be sure to arise in the course of a trial in which members of Morgan & Finnegan would be serving as trial counsel while others would be testifying as witnesses. The trial counsel would be put in the position of having to comment on and actively praise the work product of their own firm in the course of arguing the reasonable reliance on the opinion letters by Dot Hill.  Another difficulty would be that numerous extraneous issues would likely be injected into the case if a Morgan & Finnegan witness is permitted to testify.  Efforts at impeaching the Morgan & Finnegan witnesses may inquire into potential sources of bias, including the amount of fees that were generated in the production of the opinion letters and the amounts Morgan & Finnegan earned before the production of the letters and continues to earn to this day based on its work for Dot Hill. If Morgan & Finnegan were to continue to serve as trial counsel, these questions could potentially serve to impeach the credibility of Dot Hill's trial counsel at the same time as they affect the credibility of the witnesses.  The credibility of a party's trial counsel, however, clearly should not be an issue in the case.

Furthermore, so long as Morgan & Finnegan serves as trial counsel, the motivations behind the potential for a decision not to call the Morgan & Finnegan opinion attorneys as witnesses on behalf of Dot Hill becomes immediately suspect.  So long as the Morgan & Finnegan trial attorneys are grappling with divided loyalties to their firm and to their client, there can be no assurance that their representation of Dot Hill would not be different if the credibility and competence of their partners were not in issue.  Other issues that Morgan & Finnegan's service as trial counsel would tend to implicate include knowledge on the part of the Morgan & Finnegan attorneys concerning: (1) the reasons for the Chaparral purchase; (2) the development of products designed to defeat infringement; and (3) the economic benefit to Dot Hill with respect to the sale of potentially infringing products. In sum, there are simply too many potential rabbit trails and invitations to jury confusion if Morgan & Finnegan attorneys were permitted to serve as trial counsel when their partners will be taking the stand as witnesses.

In responding to Crossroads's disqualification motion, Dot Hill suggested that the Court bifurcate the trial in this case so that the necessity of the Morgan & Finnegan attorney testimony could be temporarily forestalled.  Dot Hill previously raised this issue in a motion for bifurcation, which the Court denied, *see* Order of Oct. 18, 2004, and the Court declines to reconsider its previous ruling.

Rather than adopt a set of cumbersome procedures to prevent the jury from being unduly influenced by Morgan & Finnegan's acting in dual roles, each of which may or may not be effective, the safer and more appropriate course is to require Morgan & Finnegan to refrain from participation as trial counsel in this case.  The Court notes this result is bolstered by the absence of any colorable argument for prejudice in this case.  Dot Hill has been aware of the Court's position on this issue

since September of 2004, and to the extent it has failed to prepare for this eventuality, the responsibility for this failure falls squarely on its shoulders. In any event, as Dot Hill's own counsel noted at the hearing when this issue first arose, Dot Hill is being ably represented by several competent attorneys from two law firms besides Morgan & Finnegan. Under these circumstances, it is far superior to require Dot Hill to bear the relatively minor cost of disqualifying one of the three firms that has appeared on its behalf than to confront the grave dangers posed by allowing Morgan & Finnegan to continue as trial counsel.

## IV.    Oral Motion to Quash

Finally, the Court takes up Crossroads's oral motion to quash. At docket call, the parties raised the question of whether Dot Hill would be permitted to take the deposition of the Hewlett-Packard Company. Crossroads made an oral motion to quash the deposition. For the same reason that Crossroads will not be permitted to re-depose Thomas Lavan—namely, that the period allowed for discovery in this case is over—the Court grants Crossroads's oral motion and quashes the deposition of the Hewlett-Packard Company.

### Conclusion

In accordance with the foregoing:

IT IS ORDERED that Plaintiff's Motion to Compel Further Testimony of Thomas Lavan Based on a Waiver of the Attorney-Client Privilege [#364] is DENIED;

IT IS FURTHER ORDERED that Defendant's Counter Motion to Compel the Return of Privileged Documents Bearing Bates Numbers DH337763–DH337768 and DH337839 [#373] is DENIED;

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment Dismissing Dot Hill Systems Corporation's Affirmative Defense of Invalidity of the '972 Patent with Prejudice [#356] is DENIED;

IT IS FURTHER ORDERED that Plaintiff's Motion to Disqualify Morgan & Finnegan, LLP as Trial Counsel for Dot Hill [#360] is GRANTED, and no member of Morgan & Finnegan, LLP may assist in the presentation of this case at trial;

IT IS FURTHER ORDERED that Crossroads's oral motion to quash made at the docket call in this case is GRANTED, and Dot Hill may not take the deposition of the Hewlett-Packard Company;

IT IS FURTHER ORDERED that Crossroads's Unopposed Motion to File Under Seal its Reply to Dot Hill's Opposition to Motion to Compel Further Testimony of Thomas Lavan [#377] is GRANTED;

IT IS FURTHER ORDERED that Crossroads's Unopposed Motion to File Under Seal its Motions in Limine [#379] is GRANTED; and

IT IS FINALLY ORDERED that Dot Hill's Unopposed Motion to File Under Seal its Motions in Limine and Declaration of Peter O. Huang in Support [#381] is GRANTED.


SIGNED this the 31st day of May 2006.


_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE